FILED
03 JAN 14 PM 1:43
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

MARILYN BROOKINS, PAMELA CROFT, and SHARON THOMAS, et al.,

Plaintiffs,

v.

SHONEY'S, INC., d/b/a CAPTAIN D'S,

Defendants.

Civil Action No.: 01-PT-3059-E

ENTERED
JAN 14 2003

## MEMORANDUM OPINION

This cause comes on to be heard upon Defendants' Motion for Summary Judgment, filed on July 15, 2002. This employment discrimination action involves multiple Plaintiffs, multiple positions and/or conditions of employment, and multiple decision-makers. To avoid confusion, the court has asked the Parties to group these claims based upon which decision-maker(s) ultimately made the decision(s) that were allegedly adverse to one or more of the Plaintiffs.[1] This opinion will address only those employment decisions made by Donnie Tarvin.[2]

## FACTS AND PROCEDURAL HISTORY

Defendant Shoney's, Inc., d/b/a Captain D's ("Shoney's"), is in the business of, among other things, operating the chain of Captain D's restaurants. Donnie Tarvin ("Tarvin"), is an area director for Shoney's. Plaintiff Pamela Croft ("Croft") was employed at the Gadsden, Alabama Captain D's (Rainbow Drive) location. Plaintiff Marilyn Brookins ("Brookins") was also employed at the Gadsden, Alabama (Rainbow Drive) location. Plaintiff Sharon Thomas

[1]This arrangement was made via telephone conference on November 19, 2002.

[2]It is obvious that the Plaintiffs brought a "shotgun" action, often criticized by the Eleventh Circuit, addressed to all positions which have been filled. Apparently, there were never any EEOC charges filed.

44

("Thomas") was employed at the Oxford, Alabama (and perhaps Anniston, Alabama) Captain D's. All three Plaintiffs are African-American females.

There are three employment positions at issue for purposes of these Motions:

(1) Restaurant Manager (1st Asst.) Position at the East Meighan (Gadsden) Location

This position was filled by Tarvin on September 4, 2000. The position was given to Charissa Higgins ("Higgins"), a Caucasian.

(2) Restaurant Supervisor (2d Asst.) Position at the East Meighan (Gadsden) Location

This position was filled by Tarvin on October 15, 2000. The position was given to Jameson Flagg ("Flagg"), a Caucasian.

(3) Restaurant Supervisor (2d Asst.) Position at the Rainbow City (Gadsden) Location

This position was filled by Tarvin on October 15, 2001. The position was also given to Flagg.

It is undisputed that none of the Plaintiffs applied for these positions; however, it is also undisputed that the positions were not posted. The Parties agree, at least for purposes of this Motion, that all three Plaintiffs were minimally qualified for each of the three positions. There is also no dispute that all Plaintiffs are members of a protected class, or that all three positions were filled by a Caucasian.[3]

**SUMMARY JUDGEMENT STANDARD**

Summary judgment may be granted based upon facts developed through pleadings, discovery, and supplemental affidavits, etc., if together, they show that there is no genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). A dispute is

---

[3]More specific facts will be discussed in relation to the Parties' various arguments.

genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the initial burden of explaining the basis of his motion. *Celotex*, 477 U.S. at 323. "It is never enough [for the movant] simply to state that the non-moving party could not meet their burden at trial." *Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000) (quotation omitted). The non-moving party then bears the burden of pointing to specific facts demonstrating that there is a genuine issue of fact for trial. *Celotex*, 477 U.S. at 324. The non-moving party "must either point to evidence in the record or present additional evidence 'sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.'" *Hammer v. Slater*, 20 F.3d 1137, 1141 (11th Cir. 1994) (quotation omitted). Summary judgment is required where the non-moving party merely repeats its conclusory allegations, unsupported by evidence showing an issue for trial. *Comer v. City of Palm Bay,* 265 F.3d 1186, 1192 (11th Cir. 2001) (citation omitted).

Summary judgment will not be granted until a reasonable time has been allowed for discovery. *Comer*, 265 F.3d at 1192. Moreover, "[w]hen deciding whether summary judgment is appropriate, all evidence and reasonable factual inferences drawn therefrom are reviewed in a light most favorable to the non-moving party." *Korman v. HBC Florida, Inc.*, 182 F.3d 1291, 1293 (11th Cir. 1999). Finally, the trial court must resolve all reasonable doubts in favor of the non-moving party, although it need not resolve all doubts in a similar fashion. *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990).

**ARGUMENTS**

As the Eleventh Circuit has recently observed,

> [A] plaintiff may prove its case through circumstantial evidence, using the familiar burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed.2d 668 (1973), and subsequent cases. Under this framework, the plaintiff initially must establish a prima facie case of discrimination. . . . By establishing a prima facie case, the plaintiff creates a rebuttable presumption that the employer unlawfully discriminated against her. . . . The burden then shifts to the employer to rebut this presumption by producing evidence that its action was taken for some legitimate, non- discriminatory reason. . . . Should the employer meet its burden of production, the presumption of discrimination is rebutted, and the inquiry "proceeds to a new level of specificity," in which the plaintiff must show that the proffered reason really is a pretext for unlawful discrimination.

*EEOC v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1272-73 (11th Cir. 2002) (citations omitted).

**I. *Prima Facie* Case**

A. Plaintiffs' Position

As noted above, the Parties agree that Plaintiffs are members of a protected class, that Plaintiffs were minimally qualified for the positions, and that the positions were filled by a Caucasian employee. The only real dispute as to the *prima facie* case is whether Plaintiffs "applied for" the positions in question.

While the Plaintiffs never actually applied for the positions, they argue that they were not required to, because the positions were never posted, i.e., Plaintiffs did not have notice of the positions being open. Plaintiffs rely heavily on *Carmichael v. Birmingham Saw Works*, 738 F.2d 1126 (11th Cir. 1984), to support their position. In *Carmichael*, the court held that "the plaintiff was not required to ask specifically for that job when he did not know about it and where there was no formal mechanism for expressing his interest." *Id.* at 1132-33. According to Plaintiffs, the same reasoning applies here. In relation to the *prima facie* case, the court in *Carmichael* noted that

> The prima facie case raises a presumption of discrimination because it eliminates

> the most common reasons for rejecting a job applicant: a lack of qualifications and a lack of an available job. . . . The paradigmatic prima facie case, described in *McDonnell Douglas*, requires the plaintiff to prove that he "applied for" a job to eliminate another obvious nondiscriminatory reason: that the plaintiff was not offered the job because the company did not know he was interested. McDonnell Douglas "align[s] closely the prima facie case with proof of elements within the plaintiff's own objective knowledge." . . . By showing that he applied, the plaintiff shows that the employer knew he was interested in the job. But when there is no formal notice of the job's availability, the plaintiff may have no means, within his own knowledge, of showing whether the employer considered him or not. *Furthermore, when an employer uses such informal methods it has a duty to consider all those who might reasonably be interested, as well as those who have learned of the job opening and expressed an interest.*

*Id.* at 1133 (citations omitted) (emphasis added). According to Plaintiffs, the *prima facie* case is satisfied, even if the plaintiff did not apply for the job, "as long as he establishes that the company had some reason or duty to consider him for the post." *Id.* Furthermore, "the defendant's subjective promotion procedures imposed on the defendant a duty to consider for any open position all employees who might reasonably be interested in the position." *Id.* at 1134.[4]

Plaintiffs also cite *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546 (11th Cir. 1986), and *Roberts v. Gadsden Mem'l Hosp.*, 835 F.2d 793 (11th Cir. 1988), as affirming the principles set out in *Carmichael.* The Eleventh Circuit again recognized that "informal, secretive, and subjective hiring or promotion decision processes tend to facilitate the consideration of impermissible criteria, such as race." *Roberts*, 835 F.2d at 798. According to Plaintiffs, they have met their burden under the *prima facie case*, because, under these facts, it would be

[4]The court also notes the Eleventh Circuit holding that "[t]he failure to establish 'fixed or reasonably objective standards and procedures for hiring' is a discriminatory practice." *Carmichael*, 738 F.2d at 1133 (citations omitted).

reasonable to impose a duty on Shoney's to seek them out.[5]

B. Defendant's Response

Shoney's acknowledges the general law of *Carmichael* and its progeny, but argues that those cases are distinguishable because, here, Tarvin had no duty to consider Plaintiffs for these positions, as is required by *Carmichael.* Shoney's notes that plaintiffs must show that the employer "was on notice that [the employee] 'might reasonably be interested'" in the promotion. *Cox*, 784 F.2d at 1560 (citation omitted). According to Shoney's, if a decision-maker does not know the plaintiff or is unfamiliar with the plaintiff's job performance, as a matter of law he cannot discriminate against her. *See Walker*, 286 F.3d at 1275.

Here, according to Shoney's, the undisputed evidence shows that none of the Plaintiffs worked at the East Meighan or Rainbow City locations. *See* Croft Depo. at 8-10, 16; Brookins Depo. at 20, 25; Thomas Depo. at 7, 12, 15. Moreover, the record affirmatively shows that Croft and Brookins never expressed any interest to Tarvin about being promoted, *see* Croft Depo. at 31; Brookins Depo. at 17, 19, 25, 34; Tarvin Aff. at ¶ 2, and Thomas has not produced any evidence that she expressed an interest. Further, neither Brooks nor Croft applied for the Restaurant Manager position at their own location, posted in June 2002. *See* Tarvin Aff. at ¶ 2. Simply showing that these Plaintiffs transferred between locations on a few occasions, Shoney's argues, is not enough. Tarvin simply had no duty to consider them. As such, Plaintiffs have failed to show that they were not required to "apply for" the position at issue, and thus have not

---

[5]Plaintiffs acknowledge the more recent case of *Walker v. Prudential Prop. & Cas. Ins. Co.*, 286 F.3d 1270 (11th Cir. 2002), which, while affirming its principles, distinguished *Carmichael.* However, in *Walker*, Plaintiffs argue, the promotions at issue took place in different cities over two hundred miles apart. *Id.* at 1276. Here, the locations in question were no more than thirty miles apart, and there is evidence that the Plaintiffs were sometimes transferred back and forth between locations.

made out a *prima facie* case of discrimination.[6]

C. Plaintiffs' Reply

Plaintiffs again cite *Carmichael* for the proposition that "when an employer uses such informal methods it *has a duty* to consider all those who might reasonably be interested." 738 F.2d at 1133 (emphasis added). Thus, Plaintiffs argue, the question becomes which employees might reasonably be interested in a position, a question that the Eleventh Circuit has held is one of fact. *Id.* at 1134 ("It is a disputable question of fact whether the defendant had any reason to think the plaintiff was interested in a sales job."). Thus, the jury should be allowed to determine what is reasonable. Plaintiffs also note that Shoney's has admitted that it will consider employees for a promotion, even if that employee has not expressed an interest in a promotion. *See* Walker Depo. at 49-50. Finally, Plaintiffs point out that they were transferred between the disputed locations, which would make it reasonable for Shoney's to consider them for promotions at those locations even though they did not work there on a regular basis.

**II. Legitimate, Non-discriminatory Reason and Evidence of Pretext**

Next, Shoney's argues, even if the *prima facie* case has been satisfied, it has presented legitimate, non-discriminatory reasons for each of the employment decisions at issue.

A. Restaurant Manager (1st Asst.) Position at the East Meighan Location

1. Defendant's Position

According to Shoney's, at the time in question, Becky Mahannah was the Restaurant Manger at the East Meighan location. *See* Tarvin Depo. at 9-10. Becky Mahannah was undergoing a difficult pregnancy at the time, and was unable to perform her duties. *Id.* Higgins

[6]In a footnote, Shoney's points out that in *Carmichael*, the plaintiff had expressed a general interest about being promoted, and that in *Roberts*, the plaintiff had previously applied for the position. *See* Def. Br. at 2 n.2.

was the Dining Room Supervisor at the East Meighan location, which is the only position in the management hierarchy on the same level as Restaurant Manager. *Id.*; Walker Aff. at ¶ 5. Higgins, because of Becky Mahannah's problems, was essentially acting as Restaurant Supervisor. *See* Tarvin Depo at 10, 17. According to Shoney's, Tarvin simply made Higgins' *de facto* position official. *Id.*

2. Plaintiffs' Response

Plaintiffs argue that while Tarvin may have been making the *de facto* position official, Tarvin has offered no legitimate, non-discriminatory reason as to why he let Higgins perform the duties in the first place. *See* Tarvin Depo. at 23. According to Plaintiffs, it is undisputed that no African-American employee was ever assigned the duties of Restaurant Manager as Higgins was. *Id.* at 18.

Further, Plaintiffs note, Higgins had thirteen discipline actions against her with no further action taken, although under company policy further action was required. *See* Pl. Ex. 22. By contrast, Croft had no discipline actions, Brookins had only one, and Thomas had only three (over a period of four years), none of which required further action. *See* Pl. Exs. 4, 7, 21-22, 42. Plaintiff argues that a defendant's violation of its own normal employment practices can be evidence of pretext. *See Bass v. Board of County Comm'rs, Orange County, Fla.*, 256 F.3d 1095, 1108 (11th Cir. 2001).

3. Shoney's Reply

Shoney's counters that prior discipline is not the only factor considered in awarding a promotion, and often has no bearing on the decision. *See* Tarvin Depo. at 15, 17, 32, 79. Plaintiffs cannot show that their performance evaluations demonstrated that their qualifications

were so superior to Higgins' that the disparity "slaps you in the face." *Cofield v. Goldkist*, 267 F.3d 1264, 1268 (11th Cir. 2001).

B. Restaurant Supervisor (2d Asst.) Position at the East Meighan Location

1. Defendant's Position

According to Shoney's, Flagg was filling in as Restaurant Supervisor at the time in question, and Tarvin had seen him performing his duties satisfactorily. *See* Tarvin Depo. at 16-17, 23. Shoney's argues that Tarvin had no duty to consider any other employees for the position, because he already had an employee performing the duties. Again, Tarvin simply made the *de facto* assignment official.

2. Plaintiffs' Response

Plaintiffs note that, as with Higgins, Shoney's has failed to offer a legitimate, non-discriminatory reason for allowing Flagg to assume these duties in the first place. *See* Tarvin Depo. at 23. None of the Plaintiffs were ever allowed to assume these duties as Flagg was. *See* Croft Aff. at ¶ 2; Brookins Aff. at ¶ 1; Thomas Aff. at ¶ 1; Walker Depo. at 68-69. Plaintiffs also note that Flagg violated company policy resulting in a loss of money and should have been demoted, but was not. *See* Tarvin Depo. at 42; Pl. Ex. 34. By contrast, none of the Plaintiffs engaged in conduct that warranted a demotion.[7]

3. Defendant's Reply

Shoney's counters by again noting that prior discipline is not the only factor considered in awarding a promotion, and often has no bearing on the decision. *See* Tarvin Depo. at 15, 17,

[7]Plaintiffs also argue that Flagg was a Food/Prep Cook at the time of the promotion, while Plaintiffs were all either Shift Leaders or Restaurant Supervisors. *See* Pl. Exs. 1, 3, 6, 12. Shoney's had stated that Flagg was a Shift Leader at the time, but Plaintiffs state that it has since abandoned that position.

32, 79. Plaintiffs cannot show that their performance evaluations demonstrated that their qualifications were so superior to Flagg's that the disparity "slaps you in the face." *Cofield v. Goldkist*, 267 F.3d 1264, 1268 (11th Cir. 2001).

C. Restaurant Supervisor (2d Asst.) Position at the Rainbow City Location

1. Defendant's Position

According to Shoney's, Flagg was dating Higgins, and Flagg was showing her preferential treatment. *See* Tarvin Aff. at ¶ 4. This treatment was creating problems with the other employees and resulting in poor service to customers. *Id.* When the Rainbow City position opened, Shoney's argues, Tarvin saw it as an opportunity to separate the two employees without displacing anyone. *Id.* The transfer was lateral in nature, and not a promotion. *Id.*

2. Plaintiffs' Response

Plaintiffs point out that Flagg could not have shown Higgins preferential treatment, because he was not her supervisor. Plaintiffs also note that they may satisfy their burden by showing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1539 (11th Cir. 1997). Plaintiffs also state that the transfer in lieu of demotion was a violation of company policy, citing *Bass* to argue that this in itself is evidence of pretext.

3. Defendant's Reply

Shoney's notes that, while Higgins was the First Assistant and Flagg was Second Assistant, this is not evidence of pretext. Also, Shoney's argues that there is no evidence to suggest that Tarvin should have demoted Flagg. *See* Tarvin Aff. at ¶ 4. Rather, Shoney's points

out that Tarvin specifically stated that he wanted to separate the employees in a way that did not require anyone's demotion. *Id.*

## CONCLUSIONS OF THE COURT

The court starts with the assumption that Plaintiffs Brookins and Croft are due to be, for the purposes of this Motion, considered as having applied for the three positions. They were employed in the Gadsden, Alabama area, and there is at least a question of fact as to whether they "might reasonably be interested." On the other hand, in the absence of evidence that Tarvin had previously considered employees in the Anniston-Oxford area for positions in the Gadsden area, and in further absence of the fact that Thomas had ever expressed any interest in promotions to positions in the Gadsden area, it would be pure speculation to suggest that Tarvin should have known that Thomas would be interested in such positions. *See Walker v. Prudential Prop. & Cas. Co.*, 286 F.3d 1270 (11th Cir. 2002). The 30-33 miles is different only in degree to the situation in *Walker*.[8]

### Articulated Reasons[9]

(1) Restaurant Manager (1st Asst.) Position at the East Meighan (Gadsden) Location

The court has earlier recited the Defendant's articulated reason(s) with regard to the first stated position. The Plaintiffs have not denied the articulated facts regarding Mahannah's pregnancy and Higgins' filling in. Plaintiffs argue, in effect, that Tarvin was intentionally discriminating, not in promoting Higgins to a position that she was already performing, but in

[8]The court has assumed that *Carmichael* requires employers to consider *all* employees in the proximate area who are qualified, unless they have clearly indicated a lack of interest. This court cannot resolve the possible nuances suggested by *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546 (11th Cir. 1986).

[9]It should be noted that even if Thomas is considered to have applied for the positions, the articulated reason(s) are also applicable to her, even if she has offered substantial evidence establishing a *prima facie* case.

allowing her, as the in-place dining room supervisor, to *de facto* fill the position, rather than to bring in one of the Plaintiffs to be a *de facto* Restaurant Manager (1st Assistant). This argument belies the common sense applicable to everyday business operations and represents mere hindsighting of a decision which, at the time, created no reasonable inference of intentional discrimination.[10]

(2) Restaurant Supervisor (2d Asst.) Position at the East Meighan (Gadsden) Location

The articulated reason(s) are similar to the situation with regard to Position (1). None of the Plaintiffs was working at the location when Flagg began to fill in. There is no evidence that his filling in was based on intentional discrimination.

(3) Restaurant Supervisor (2d Asst.) Position at the Rainbow City (Gadsden) Location

Again, the articulated reason(s) have been earlier stated. Initially, it appears that this position did not involve a promotion at all; only a lateral transfer to remedy a perceived disruptive social relationship. Again, the articulated facts are not denied. Again, the court concludes that there is no reasonable inference of intentional discrimination, only a common sense attempt to resolve a problem.

The court attaches hereto questions posed to the Parties while the Motion was under consideration and their responses thereto.

After considering all the evidence at the time of submission, the court concludes that there is no reasonable inference of intentional discrimination as to any position.

---

[10]The court assumes, without deciding, that the Complaint's allegations are broad enough to encompass such an argument of earlier discrimination. Another issue may be whether *Carmichael* applies to a situation where the person receiving the position has been previously filling in at the position in a location where he/she was already working and there is no evidence that the filling in resulted from intentional discrimination, only convenience of expedience.

This 14th day of January, 2003.

ROBERT B. PROPST
SENIOR UNITED STATES DISTRICT JUDGE



"Toni Braxton" <tbraxton@brookspc.net>
01/02/2003 02:06 PM

To: <BrentCobb@alnd.uscourts.gov>
cc:
Subject: Re: Questions from Judge Propst; re: Beavers

I have received your e-mail and will respond to the questions by Wednesday.
Thanks.
----- Original Message -----
From: <BrentCobb@alnd.uscourts.gov>
To: <tbraxton@brookspc.net>
Cc: <ljordan@bradleyarant.com>
Sent: Thursday, January 02, 2003 12:37 PM
Subject: Questions from Judge Propst; re: Beavers

\> Judge Propst asked me to e-mail the following questions regarding the
\> positions filled by decision-maker Donnie Tarvin:
\>
\> 1. Is there any evidence that Tarvin ever made promotions by transferring
\> employees from one location to another? If so, where and when?
\>
\> 2. Did any of the Plaintiffs ever work at the locations where the
\> promotions sued for took place? Who and When?
\>
\> 3. Are there any cases which talk about promotions from other locations?
\>
\> 4. Did Tarvin supervise all of the Plaintiffs at all pertinent times?
\>
\> 5. When Flagg and Higgins filled in for the positions for which they were
\> promoted, were they already working at those locations? Any evidence that
\> Tarvin had ever transferred anyone under similar conditions from another
\> location to fill in?
\> Please submit your answers as a reply to this e-mail no later than
\> Wednesday, January 8. In answering, please refer to specific portions of
\> the record, or provide specific quotations from cases, whichever is
\> applicable.
\>
\> Also, please respond to this e-mail today or tomorrow so that I know you
\> received. If you have any questions, please feel free to e-mail or call
at
\> 278-1860.
\>
\> Brent Cobb
\> Judge Propst's law clerk.
\>
\>

January 8, 2003

Brent Cobb, Clerk
Honorable Robert B. Propst Chambers
581 Hugo L. Black U.S. Courthouse
1729 5th Avenue North
Birmingham, Alabama 35203

**Re: Beavers v. Shoney's Inc.;**
**Case No. CV-01-PT-3059-E**

Dear Brent:

Following are responses to the questions posed to the Plaintiff by e-mail on January 2, 2003 regarding the above-referenced matter.

1. Is there any evidence that Tarvin ever made promotions by transferring employees from one location to another? If so, where and when?

   **There is no evidence in the record that Tarvin made promotions by transferring employees. However, there is evidence that he filled one of the positions at issue in this case by transferring an employee from one facility to another. On October 15, 2001, Tarvin transferred Jameson Flagg from East Meighan to Restaurant Supervisor in Rainbow City. (Exhibit 12; Tarvin depo., pp. 8, 38).**

2. Did any of the Plaintiffs ever work at the locations where the promotions sued for took place? Who and When?

   **The three positions awarded by Donnie Tarvin were located in either East Meighan or Rainbow City. Although not employed full-time at these locations, Plaintiffs Brookins and Croft both filled in at the East Meighan store on occasion in 2001. (See Affidavits attached).[1]**

3. Are there any cases which talk about promotions from other locations?

**The Eleventh Circuit in Walker v. Prudential Property and Casualty Ins. Co., 286 F.3d 1270 (11th Cir. 2002)(previously submitted to the Court) held that the employer had no reason to believe that Fort Lauderdale employees would be interested in a position in Orlando because the promotions at issue took place over two hundred miles apart. Id at 1276. In the case before this Court, the locations of the promotions at issue were either in the same city (Gadsden, Alabama) or just a little over thirty (30) miles apart (Oxford and East Meighan).**

4. Did Tarvin supervise all of the Plaintiffs at all pertinent times?

**Donnie Tarvin was Area Director for all the Gadsden stores, including the Rainbow Drive and Oxford locations. As such, he supervised Plaintiffs Croft, Brookins and Thomas during all periods relevant to this lawsuit. (Walker depo., pp. 9-10; See also Affidavits attached).**

5. When Flagg and Higgins filled in for the positions for which they were promoted, were they already working at those locations? Any evidence that Tarvin had ever transferred anyone under similar conditions from another location to fill in?

**According to the Defendant both were already working at those locations and were simply put into the promotional positions. There is no evidence that Plaintiffs have in their possession. It does not appear that this issue was ever explored during depositions. The Defendant would be in a better position to respond to this question and provide evidence.**

Sincerely,

[1]These affidavits will be filed with the Court and a true and correct, signed copy will be hand- delivered to you in Judge Propst's chambers and mailed to opposing counsel. Plaintiffs submit this evidence pursuant to Fed.R.Civ.P. 56(f).



**"Jordan, Laura" <LJordan@bradleyarant.com>**

01/07/2003 04:45 PM

To: <BrentCobb@alnd.uscourts.gov>, <tbraxton@brookspc.net>
cc:
Subject: RE: Questions from Judge Propst; re: Beavers

The following are the answers to Judge Propst's questions on behalf of Defendant:

1. Is there any evidence that Tarvin ever made promotions by transferring employees from one location to another? If so, where and when?

Answer: No. There is no evidence in the record that Tarvin promoted employees by transferring them to another location. Tarvin has laterally transferred employees to positions in other restaurants. See Defendant's Supplemental Discovery Responses; Tarvin Aff., 4. For example, the Rainbow City restaurant was opened in October 2001. Tarvin Aff., 3. Since it was a start-up restaurant, the only way to staff it was by transfer (or hiring off the street).

2. Did any of the Plaintiffs ever work at the locations where the promotions sued for took place? Who and When?

Answer: No. Thomas has worked only in the Oxford and Anniston locations. (Thomas Depo. 12-15). Croft has worked only at the Rainbow Drive restaurant since 1991. (Croft Depo. 9-10). Brookins worked in Leeds in the early 1990s and then transferred to Rainbow Drive. (Brookins Depo. 24-25).

3. Are there any cases which talk about promotions from other locations?

Answer: Yes. In Walker v. Prudential Prop. And Casualty Ins. Co., 286 F.3d 1270 (11th Cir. 2002), the court held that even though the position at issue was filled by informal means, defendants had no duty to consider Fort Lauderdale employees for an Orlando position. Walker, 286 F.3d at 1276.

4. Did Tarvin supervise all of the Plaintiffs at all pertinent times?

Answer: Yes as to Brookins and Croft; no as to Thomas. When Tarvin took over responsibility for the Rainbow Drive, Rainbow City, and East Meighan restaurants in late 2000, Brookins and Croft were working at Rainbow Drive. (Tarvin Aff., 1). Tarvin did not supervise Thomas when any of the decisions at issue were made (but she did work in a store that he managed 2 years earlier). (Tarvin Depo. 29; Tarvin Aff., 1).

5. When Flagg and Higgins filled in for the positions for which they were promoted, were they already working at those locations? Any evidence that Tarvin had ever transferred anyone under similar conditions from another location to fill in?

Answer: The summary judgment record is silent on the first issue; it shows only that Tarvin inherited the Flagg/Higgins "fill in" situation when he was assigned the restaurant in late 2000. Documents produced during discovery show that both Flagg and Croft went to work at the East Meighan restaurant in 1997 and worked there continuously until they began filling in for the positions at issue. (Documents bearing Bates Nos. B0560 and B0468).

There is no evidence that Tarvin ever transferred anyone to fill in at a

different location.

Laura W. Jordan
521-8594

-----Original Message-----
From: BrentCobb@alnd.uscourts.gov [mailto:BrentCobb@alnd.uscourts.gov]
Sent: Thursday, January 02, 2003 12:37 PM
To: tbraxton@brookspc.net
Cc: Jordan, Laura
Subject: Questions from Judge Propst; re: Beavers

Judge Propst asked me to e-mail the following questions regarding the positions filled by decision-maker Donnie Tarvin:

1. Is there any evidence that Tarvin ever made promotions by transferring
employees from one location to another? If so, where and when?

2. Did any of the Plaintiffs ever work at the locations where the promotions sued for took place? Who and When?

3. Are there any cases which talk about promotions from other locations?

4. Did Tarvin supervise all of the Plaintiffs at all pertinent times?

5. When Flagg and Higgins filled in for the positions for which they were
promoted, were they already working at those locations? Any evidence that
Tarvin had ever transferred anyone under similar conditions from another location to fill in?
Please submit your answers as a reply to this e-mail no later than Wednesday, January 8. In answering, please refer to specific portions of
the record, or provide specific quotations from cases, whichever is applicable.

Also, please respond to this e-mail today or tomorrow so that I know you received. If you have any questions, please feel free to e-mail or call at
278-1860.

Brent Cobb
Judge Propst's law clerk.