FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION         03 MAR 17 PM 1:19

U.S. DISTRICT COURT
N.D. OF ALABAMA

MARILYN BROOKINS, PAMELA CROFT, )
SHARON THOMAS, and SARAH BITTICKS, )
et al., )
 )
    Plaintiffs, )
 )
v. ) Civil Action No.: 01-PT-3059-E
 )
SHONEY'S, INC., d/b/a CAPTAIN D'S, )
 )
    Defendant. )

ENTERED

MAR 17 2003

**MEMORANDUM OPINION**

This cause comes on to be heard upon defendant's Motion for Summary Judgment, filed on July 15, 2002. This employment discrimination action involves multiple plaintiffs, multiple positions and/or conditions of employment, and multiple decision-makers. To avoid confusion, the court has asked the parties to group these claims based upon which decision-maker(s) ultimately made the decision(s) that were allegedly adverse to one or more of the plaintiffs.[1] This opinion will address only those employment decisions made by Linda Macke.[2]

**FACTS AND PROCEDURAL HISTORY**

Defendant Shoney's, Inc., d/b/a Captain D's ("Shoney's"), is in the business of, among other things, operating the chain of Captain D's restaurants. Linda Macke ("Macke"), is an Area Director for Shoney's. Plaintiff Pamela Croft ("Croft") was employed at the Gadsden, Alabama Captain D's (Rainbow Drive) location. Plaintiff Marilyn Brookins ("Brookins") was also

---

[1]This arrangement was made via telephone conference on November 19, 2002.

[2]It is obvious that the plaintiffs brought a "shotgun" action, often criticized by the Eleventh Circuit, addressed to all positions which have been filled. Apparently, there were never any EEOC charges filed.



employed at the Gadsden, Alabama (Rainbow Drive) location. Plaintiff Sharon Thomas ("Thomas") was employed at the Oxford, Alabama (and perhaps Anniston, Alabama) location. Plaintiff Sarah Bitticks ("Bitticks") was also employed at the Oxford, Alabama location. All four plaintiffs are African-American.

There are four employment positions at issue for purposes of this opinion:

(1) Restaurant Supervisor (2d Asst.) Position at the Anniston Location

This position was filled by Macke on January 21, 2001. The position was given to Scott Anderson ("Anderson"), a Caucasian. Anderson was not working for Shoney's at the time he was awarded this position, although he had been a 2d Assistant in the past. Only Croft, Brookins, and Thomas brought suit with respect to this position.

(2) Restaurant Manager (1st Asst.) Position at the Anniston Location

This position was filled by Macke and Eric Brown[3] on April 15, 2001. The position was also given to Anderson, a Caucasian. Anderson was the 2d Assistant in Anniston when he was awarded this position. Only Croft, Brookins, and Thomas brought suit with respect to this position.

(3) Restaurant Manager (1st Asst.) Position at the Oxford (possibly Anniston)[4] Location

This position was filled by Macke on May 22, 2000. The position was given to Dana Edwards, a Caucasian. Edwards was working as the 2d Assistant in the same location when she was awarded this position. Only Croft, Brookins, and Thomas brought suit with respect to this

---

[3]Shoney's asserts that this decision was made by Macke alone. *See* Def. Resp. at 7 n.2.

[4]Shoney's asserts that this position was actually at the Anniston location. *See* Def. Resp. at 10 n.3. Plaintiffs still contend that the position was in Oxford. *See* Pl. Reply Br. at 6. Shoney's admits that Walker mistaken stated that the position was in Oxford, but asserts that he later corrected himself to say that it was in Anniston. *See* Walker Depo. at 34-36.

2

position.

(4) General Manager Position at the Oxford Location

This position was filled by Macke and Cortez Walker on April 15, 2001. The position was also given to Edwards, a Caucasian. Edwards was working as a 1st Assistant in the Oxford (possibly Anniston) location when she was awarded this position. All four plaintiffs brought suit with respect to this position.

It is undisputed that none of the plaintiffs applied for these positions; however, it is also undisputed that the positions were not posted. The parties agree, at least for purposes of this motion, that, with the exception of position #4, the plaintiffs were minimally qualified for each of the positions. There is also no dispute that all plaintiffs are members of a protected class, or that all four positions were filled by a Caucasian.[5]

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted based upon facts developed through pleadings, discovery, and supplemental affidavits, etc., if together, they show that there is no genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the initial burden of explaining the basis of his motion. *Celotex*, 477 U.S. at 323. "It is never enough [for the movant] simply to state that the non-moving party could not meet their burden at trial." *Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000) (quotation omitted). The non-moving party then bears the burden of pointing to specific facts

---

[5]More specific facts will be discussed in relation to the Parties' various arguments.

3

demonstrating that there is a genuine issue of fact for trial. *Celotex*, 477 U.S. at 324. The non-moving party "must either point to evidence in the record or present additional evidence 'sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.'" *Hammer v. Slater*, 20 F.3d 1137, 1141 (11th Cir. 1994) (quotation omitted). Summary judgment is required where the non-moving party merely repeats its conclusory allegations, unsupported by evidence showing an issue for trial. *Comer v. City of Palm Bay*, 265 F.3d 1186, 1192 (11th Cir. 2001) (citation omitted).

Summary judgment will not be granted until a reasonable time has been allowed for discovery. *Comer*, 265 F.3d at 1192. Moreover, "[w]hen deciding whether summary judgment is appropriate, all evidence and reasonable factual inferences drawn therefrom are reviewed in a light most favorable to the non-moving party." *Korman v. HBC Florida, Inc.*, 182 F.3d 1291, 1293 (11th Cir. 1999). Finally, the trial court must resolve all reasonable doubts in favor of the non-moving party, although it need not resolve all doubts in a similar fashion. *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990).

## ARGUMENTS

### I. *Prima Facie* Case

A. Restaurant Supervisor (2d Asst.) Position at the Anniston Location; Restaurant Manager (1st Asst.) Position at the Anniston Location; Restaurant Manager (1st Asst.) Position at the Oxford (possibly Anniston) Location (Positions 1-3).

As noted above, the parties agree that plaintiffs are members of a protected class, that plaintiffs were minimally qualified for the positions, and that the positions were filled by a Caucasian employee. The only real dispute as to the *prima facie* case is whether plaintiffs "applied for" the three positions in question.

4

1. Plaintiffs' Position

While the plaintiffs never actually applied for the positions, they argue that they were not required to, because the positions were never posted, i.e., plaintiffs did not have notice of the positions being open. Plaintiffs rely heavily on *Carmichael v. Birmingham Saw Works*, 738 F.2d 1126 (11th Cir. 1984), to support their position.⁶ In *Carmichael*, the court held that "the plaintiff was not required to ask specifically for that job when he did not know about it and where there was no formal mechanism for expressing his interest." *Id.* at 1132-33. According to plaintiffs, the same reasoning applies here. In relation to the *prima facie* case, the court in *Carmichael* noted that

> The prima facie case raises a presumption of discrimination because it eliminates the most common reasons for rejecting a job applicant: a lack of qualifications and a lack of an available job. . . . The paradigmatic prima facie case, described in *McDonnell Douglas*, requires the plaintiff to prove that he "applied for" a job to eliminate another obvious nondiscriminatory reason: that the plaintiff was not offered the job because the company did not know he was interested. McDonnell Douglas "align[s] closely the prima facie case with proof of elements within the plaintiff's own objective knowledge." . . . By showing that he applied, the plaintiff shows that the employer knew he was interested in the job. But when there is no formal notice of the job's availability, the plaintiff may have no means, within his own knowledge, of showing whether the employer considered him or not. *Furthermore, when an employer uses such informal methods it has a duty to consider all those who might reasonably be interested, as well as those who have learned of the job opening and expressed an interest.*

*Id.* at 1133 (citations omitted) (emphasis added). According to plaintiffs, the *prima facie* case is satisfied, even if the plaintiff did not apply for the job, "as long as he establishes that the company had some reason or duty to consider him for the post." *Id.* Furthermore, "the defendant's subjective promotion procedures imposed on the defendant a duty to consider for

---

⁶Plaintiffs do not actually cite *Carmichael* or any other cases in their initial submission. However, this argument was taken from plaintiffs' brief regarding decision-maker Donnie Tarvin, and, given the nature of their initial submission, the court assumes that they are making the same arguments here.

5

any open position all employees who might reasonably be interested in the position." *Id.* at 1134.[7]

Plaintiffs also cite *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546 (11th Cir. 1986), and *Roberts v. Gadsden Mem'l Hosp.*, 835 F.2d 793 (11th Cir. 1988), as affirming the principles set out in *Carmichael*. The Eleventh Circuit again recognized that "informal, secretive, and subjective hiring or promotion decision processes tend to facilitate the consideration of impermissible criteria, such as race." *Roberts*, 835 F.2d at 798. According to plaintiffs, they have established a *prima facie* case, because, under these facts, it would be reasonable to impose a duty on Shoney's to seek them out.

2. Defendant's Response

Shoney's argues that Macke had no duty to consider these plaintiffs for these positions. Shoney's notes that plaintiffs must show that the employer "was on notice that [the employee] 'might reasonably be interested'" in the promotion. *Cox*, 784 F.2d at 1560 (citation omitted). According to Shoney's, if a decision-maker does not know the plaintiff or is unfamiliar with the plaintiff's job performance, as a matter of law he cannot discriminate against her. *See Walker*, 286 F.3d at 1275.

As to Brookins and Croft, Shoney's argues, there is no evidence to suggest that it was on notice that they were interested in the four promotions. Neither of these plaintiffs worked at the Anniston or Oxford restaurants where the positions were filled. *See* Croft Depo. at 8-10, 16; Brookins Depo. at 20, 25. Neither of these plaintiffs has offered any evidence that they

---

[7] The court also notes the Eleventh Circuit holding that "[t]he failure to establish 'fixed or reasonably objective standards and procedures for hiring' is a discriminatory practice." *Carmichael*, 738 F.2d at 1133 (citations omitted).

expressed an interest in being promoted or in commuting to the Anniston/Oxford area. There is no evidence that Macke even knew these plaintiffs or that either Walker or Macke was familiar with their job performance. Finally, Shoney's notes, neither Brookins nor Croft applied for the First Assistant position that was posted in their own restaurant in June 2002. *See* Tarvin Aff. at ¶ 2.

As for Thomas, Shoney's argues that it had no duty to consider her for the three Anniston positions, because Thomas had made it clear that she did not want to work in Anniston. *See* Brown Aff. at ¶ 3. According to Shoney's, Thomas asked to be transferred out of the Anniston location in late 1999 due to a conflict with another employee at that location. *Id.* Thus, Shoney's contends, it could not have possibly been on notice that Thomas had a reasonable interest in these jobs.

Finally, Shoney's points to the deposition of Walker, in which he states that an employee "ha[s] to have the desire and ha[s] to somehow indicate desire . . . If someone hasn't approached us or we have no knowledge of their wanting a promotion, we wouldn't [promote them.]" *See* Walker Depo. at 18. He further stated that "very rarely does someone get promoted [at Shoney's] that hasn't somewhere along the line voiced a desire to move up either in general or specific positions." *Id.* at 20.

3. Plaintiffs' Reply

Plaintiffs cite *Carmichael* for the proposition that "when an employer uses such informal methods it *has a duty* to consider all those who might reasonably be interested." 738 F.2d at 1133 (emphasis added). Thus, plaintiffs argue, the question becomes which employees might reasonably be interested in a position, a question that the Eleventh Circuit has held is one of fact.

7

*Id.* at 1134 ("It is a disputable question of fact whether the defendant had any reason to think the plaintiff was interested in a sales job."). Thus, the jury should be allowed to determine what is reasonable. Plaintiffs also note that Shoney's has admitted that it will consider employees for a promotion, even if that employee has not expressed an interest in a promotion. *See* Walker Depo. at 49-50.

Plaintiffs acknowledge the more recent case of *Walker v. Prudential Prop. & Cas. Ins. Co.*, 286 F.3d 1270 (11th Cir. 2002), which, while affirming its principles, distinguished *Carmichael*. However, in *Walker*, plaintiffs argue, the promotions at issue took place in different cities over two hundred miles apart. *Id.* at 1276. Here, the locations in question were no more than thirty miles apart, and there is evidence that employees were sometimes transferred back and forth between locations. *See* Walker Depo. at 24, 90, 125-26, 141-42. Indeed, as will be discussed more fully below, Shoney's acknowledges that for position #4, it actually sought an employee from the outside. *Id.* at 26-28.[8]

B. General Manager Position at the Oxford Location (Position #4)

In addition to the arguments concerning whether the plaintiffs "applied for" this position, there is also a dispute as to whether the plaintiffs were in fact qualified for this position.

1. Plaintiffs' Position

Plaintiffs acknowledge that the possible criteria for General Manager include, among other things, performance, punctuality, leadership, and the ability to train employees, manage and administer personnel policies, and deal with employee problems. *See* Walker Depo. at 32.

---

[8]Plaintiffs also argue that, as to Thomas, it was unreasonable for Shoney's to assume that she would not want to work in Anniston, given the significant period of time that lapsed between her request for a transfer and these promotions.

8

However, they contend, only management experience was considered in this case. *Id.* at 41. They also note that there is not a checklist for being qualified for the position of General Manager. *Id.* at 59-60.

As to specific qualifications, plaintiffs contend that they were all qualified for the Restaurant Supervisor and Restaurant Manager positions. *Id.* at 70-73. Indeed, Bitticks has been both Restaurant Supervisor and Restaurant Manger. *See* Pl. Ex. 8. Plaintiffs contend that Restaurant Manager is the first to be considered for General Manager. *See* Walker Depo. at 34. Croft, Brookins, and Thomas note that they have been employed by Shoney's for at least ten years each. *See* Pl. Exs. 1, 3, 6. Plaintiffs also contend that they were involved in management at their restaurants and/or were given additional responsibilities. *See* Croft Depo. at 17; Brookins Depo. at 26; Walker Depo. at 41; Pl. Exs. 6, 8; Tarvin Aff. at ¶ 5. Croft and Brookins note that their performance reviews have exceeded expectations. *See* Pl. Exs. 2, 5. Finally, Cortez Walker testified that Thomas knows how to follow directions, can manage and administer, and can deal with employee problems. *See* Walker Depo. at 48, 53-54.

2. Defendant's Response

Shoney's contends that none of the four plaintiffs ever expressed any interest in being promoted and/or transferring to the Oxford location. As for the actual qualifications of the plaintiffs, Shoney's notes that Walker wanted someone with prior general manager experience. *See* Walker Depo. at 41-42. However, none of these plaintiffs had any prior experience as a General Manager. *See* Croft Depo. at 16; Brookins Depo. at 9-10; Thomas Depo. at 10, 12; Pl. Ex. 8. As to each plaintiff specifically, Shoney's notes that Croft was a Shift Leader, and that "[t]ypically, we wouldn't promote . . . [a] shift leader, to a general manager's job. *See* Walker

9

Depo. at 68-69. Brookins, as a Dining Room Supervisor, had no experience "working in the kitchen," and Walker stated that Shoney's typically would not hire someone as a General Manager who had no prior experience in the kitchen. *Id.* at 49, 74-77. Also, Brookins "was inconsistent in her performance as a supervisor . . . [she] was an average to below average performer on a given day." *Id.* at 60.

As to Thomas, Shoney's notes that she did not have kitchen experience either. *See* Walker Depo. at 49, 51, 74-77. Also, Walker testified that Thomas did not provide leadership "as well as she should have," that she did not always demonstrate an ability to train, and that she could not deliver food in an appropriate manner. *Id.* at 48, 51. Walker stated that these were criteria that he typically considers in making a promotion decision. *Id.* at 32. Finally, Walker stated that he was looking for someone to come in from outside the Oxford location in order to effectuate the change in management that was needed in Oxford. *Id.* at 27-28; Macke Aff. at ¶ 2; Walker Aff. at ¶ 7. However, Thomas was working at the Oxford location at that time. *See* Thomas Depo. at 14-15.

Finally, as to Bitticks, Shoney's notes that she too was employed at the Oxford location at that time. *See* Bitticks Depo. at 15-16, 18, 84. Moreover, Walker did not believe that Bitticks was qualified to become a General Manager. *See* Walker Depo. at 73-74.

3. Plaintiffs' Reply

Plaintiffs note that Walker testified that he did not care how much prior experience Edwards had. *See* Walker Depo. at 45. They also note that Walker admitted that a person could be qualified as a General Manager without kitchen experience. *Id.* at 77.[9] Brookins and Thomas

---

[9] He did state, however, that it would be "extremely difficult" to do the job without kitchen experience. *Id.* at 77.

10

also assert that they did in fact have kitchen experience. *See* Brookins Depo. at 26; Thomas Aff. Plaintiffs further assert that Edwards was working at the Oxford location when she was promoted. *See* Walker Depo. at 43.[10] Thus, the qualification that the General Manager had to come from outside the store is not legitimate. Plaintiffs also restate their qualifications for the job. Finally, as to Walker's observation that Bitticks was not qualified for the position, plaintiffs note that subjective criteria for a promotion are a "ready mechanism for discrimination." *Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 644 (11th Cir. 1998).

**II. Legitimate, Non-discriminatory Reason and Evidence of Pretext**

Next, Shoney's argues, even if the *prima facie* case has been satisfied, it has presented legitimate, non-discriminatory reasons for each of the employment decisions at issue.

A. Restaurant Supervisor (2d Asst.) Position at the Anniston Location

1. Defendant's Position

Initially, Shoney's again argues that it had no duty to consider these plaintiffs for this position. Next, as to the actual decision-making process, Shoney's contends that Macke was looking for someone with job knowledge, job performance, past experience, the desire to do the job, and the ability to take care of customers. *See* Interrog. Resp. She chose Anderson, Shoney's asserts, because he had been a Restaurant Supervisor before (thus giving him prior experience), he was good with people, and he was able to identify what needed to be done without being asked. *Id.* The fact that Croft, Brookins, and Thomas had worked at Shoney's longer than Anderson, Shoney's argues, does not equate with Macke lying about why she selected Anderson. Shoney's notes that none of these plaintiffs had acted as a Restaurant

---

[10] It appears to the court that Walker was at best unsure about where Edwards was employed. *See* Walker Depo. at 35-36.

11

Supervisor before. Thus, there is no evidence that plaintiffs' qualifications were so superior to Anderson's that the disparity "slaps you in the face." *Cofield v. Goldkist*, 267 F.3d 1264, 1268 (11th Cir. 2001).

2. Plaintiffs' Response[11]

Plaintiffs argue that the articulated reasons, provided by Shoney's in its Supplemental Responses to Plaintiffs' Second Interrogatories, are "new" evidence that should not be considered by this court. First, they argue, the evidence contradicts the testimony of Walker, Shoney's Federal Rule of Civil Procedure 30(b)(6) witness. When asked why Anderson and Edwards were promoted to the first three positions at issue, he responded that he did not know. *See* Walker Depo. at 13, 16-17. Plaintiffs argue that, as a Rule 30(b)(6) witness, Walker's statements are binding on Shoney's. *See, e.g., In re Bilzerian*, 258 B.R. 846, 848 (M.D. Fla. 2001) ("[U]nder Rule 30(b)(6), the deponent 'must make a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought by [the party noticing the deposition] and to prepare those persons in order that they can answer fully, completely, unevasively, the questions posed . . . as to the relevant subject matters.'") (citation omitted). Plaintiffs also note that "[i]f the designated deponent cannot answer those questions, then the corporation has failed to comply with its Rule 30(b)(6) obligations." *King v. Pratt & Whitney*, 161 F.R.D. 475, 476 (S.D. Fla. 1995). Plaintiffs argue that the deposition notice in this case clearly covered the promotions at issue. *See* Pl. Reply Ex. A. Therefore, plaintiffs contend, because Walker's answers are binding, Shoney's has failed to articulate a legitimate, non-discriminatory reason, and summary judgment should be denied. *See Turnes v. AmSouth Bank*,

---

[11]Plaintiffs have filed a Motion to Strike (Doc. 52) that makes the same arguments.

12

36 F.3d 1057, 1061 (11th Cir. 1994) (holding that an employer must produce a reason that was available to it at the time).

Second, plaintiffs argue, the articulated reasons should be stricken because they are untimely. Plaintiffs note that discovery was cut off in this case on June 30, 2002, and Shoney's motion for summary judgement was filed on July 15, 2002; however, the interrogatory responses now relied upon by Shoney's were served on October 16, 2002. *See* Pl. Reply Ex. B. Plaintiffs cite *Mays v. United States Postal Service*, 122 F.3d 43, 46 (11th Cir. 1997), in which the court held that "where a party attempts to introduce previously unsubmitted evidence on a motion to reconsider, the court should not grant the motion absent some showing that the evidence was not available during the pendency of the motion." Plaintiffs argue that a similar rule should be applied here. Plaintiffs assert that Shoney's has proffered no reasonable explanation why this information was not available prior to October 16, 2002, and they contend that they have been prejudiced in that they were not allowed an opportunity to conduct discovery as to these proffered reasons.[12]

### 3. Defendant's Reply[13]

Shoney's argues that the only position at issue that was included in the deposition notice is the April 2001 General Manager position (position #4), and that Walker clearly answered questions about his reasons for that decision in his deposition. *See* Walker Depo. at 27-28, 41-45. Shoney's notes that in *King*, relied upon by the plaintiffs, the court stated that "relevant

---

[12]Plaintiffs also argue that there is no evidence that Macke made these assertions under oath. Rather, the interrogatory responses were verified by Phillip Purcell, who did not indicate whether he had personal knowledge that Macke actually considered these reasons.

[13]These arguments are taken from Shoney's Response to the Motion to Strike (Doc. 53).

questions may be asked [outside the scope of the notice]. . . . However, if the deponent does not know the answer to questions outside the scope of the matters described in the notice, then that is the examining party's problem." 161 F.R.D. at 476.

### B. Restaurant Manager (1st Asst.) Position at the Anniston Location

#### 1. Defendant's Position

As with the first position, Shoney's initially argues that it had no duty to consider these plaintiffs for this position. Regarding the actual decision-making process, Shoney's contends that Macke was again looking for someone with job knowledge, job performance, past experience, the desire to do the job, and the ability to take care of customers. *See* Interrog. Resp. Macke selected Anderson, Shoney's asserts, because she felt that he was next in line to be promoted, he had previous Restaurant Manager experience, he had filled in as General Manager when Eric Brown was on vacation, he was punctual, and he was good with both employees and customers. *Id.* Shoney's contends that length of service, a factor relied upon by the plaintiffs, was not a factor in Macke's decision to promote Anderson. Thus, evidence of plaintiffs' length of service is not evidence of pretext.

#### 2. Plaintiffs' Response/Defendant's Reply

The parties make the same arguments that they made with regards to the first position

### C. Restaurant Manager (1st Asst.) Position at the Oxford (possibly Anniston) Location

#### 1. Defendant's Position

Again, Shoney's initially argues that it had no duty to consider these plaintiffs for this position. Regarding the actual decision-making process, Shoney's contends that Macke was again looking for someone with job knowledge, job performance, past experience, the desire to

14

do the job, and the ability to take care of customers. *See* Interrog. Resp. Macke chose Edwards, Shoney's asserts, because Edwards had previous Restaurant Manger experience, she was already doing inventory and ordering in the restaurant, and she possessed good people skills. *Id.*

2. Plaintiffs' Response/Defendant's Reply

The parties make the same arguments that they made with regards to the first position

D. General Manager Position at the Oxford Location

1. Defendant's Position

Shoney's initially argues that it had no duty to consider these plaintiffs for this position. Regarding the actual decision-making process, Shoney's contends that it wanted to hire someone from outside the Oxford location in order to effectuate the change in management needed in Oxford. *See* Walker Depo. at 27-28, 34-36; Macke Aff. at ¶ 2; Walker Aff. at ¶ 7. Shoney's argues that Walker and Macke felt that Edwards, who was First Assistant in Anniston at the time, was the best choice based upon her qualifications and performance in Anniston. *See* Walker Depo. at 27-28; Macke Aff. at ¶ 2; Walker Aff. at ¶ 7. Also, Edwards had prior experience as a General Manager at another restaurant. *See* Walker Depo. at 41-45.

2. Plaintiffs' Response

Plaintiffs counter by arguing that Edwards was employed at the Oxford, not Anniston, location when she was promoted. *See* Walker Depo. at 43. Thus, plaintiffs contend, Shoney's position about wanting someone from outside the Oxford store was pretextual. Moreover, plaintiffs note, Edwards qualifications were not as impressive as Shoney's indicated. Three months before she was promoted, Edwards was suspended for falsifying documents. *See* Pl. Ex. 3. Plaintiffs also assert that Walker did not consider Edwards to be an outstanding performer.

15

*See* Walker Depo. at 58. Finally, the Oxford store (where plaintiffs contend that Edwards was assisting in managing) was performing poorly. *Id.* at 34-35.

As for Edwards' prior experience as a General Manager, plaintiffs assert that Walker testified that it did not matter to him how much experience she had at the other restaurant. *Id.* at 45. Walker also testified that he did not look at Edwards application when he made his decision, and plaintiffs assert that this is where he would have seen that she had prior experience. *Id.* at 43.

### 3. Defendant's Reply

Again, Shoney's notes, the disparities between Edward's qualifications and plaintiffs' were not so severe as to "slap you in the face." *Cofield*, 267 F.3d at 1268. Moreover, plaintiffs' own opinions about their qualifications are irrelevant. Because this is an intentional discrimination case, Shoney's argues, it is the opinion of the person making the decision that matters. *See Holifield v. Reno*, 115 F.3d 1555, 1565 (11th Cir. 1997).

## CONCLUSIONS OF THE COURT

The court starts with the possible assumption that plaintiffs Brookins and Croft are due to be, for the purposes of this motion, considered as having applied for the four positions, although they were employed in the Gadsden, Alabama area, and there is a minimal inference that they "might reasonably be interested." On the other hand, in the absence of evidence that Macke had previously considered employees in the Gadsden area for positions in the Anniston-Oxford area, and in further absence of the fact that they had ever expressed any interest in promotions to positions in the Anniston-Oxford area, it would be pure speculation to suggest that Macke should have known that they would be interested in such positions. *See Walker v. Prudential Prop. &*

16

*Cas. Co.*, 286 F.3d 1270 (11th Cir. 2002). The 30-33 miles is different only in degree to the situation in *Walker*.[14]

As to Thomas and Bitticks, they perhaps should have been considered to have been reasonably interested in the Anniston-Oxford positions. The court will further refer to the positions as numbered on page 2 above.

Positions (1), (2), and (3):

The motion will be granted as to Croft and Brookins and denied as to Thomas. Bitticks has not made a claim on these positions.

Position (4):

The motion will be granted as to Croft and Brookins and denied as to Thomas and Bitticks.

This 17TH day of March, 2003.

ROBERT B. PROPST
**SENIOR UNITED STATES DISTRICT JUDGE**

---

[14] The court has assumed that *Carmichael* requires employers to consider *all* employees in the proximate area who are qualified, unless they have clearly indicated a lack of interest. This court cannot resolve the possible nuances suggested by *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546 (11th Cir. 1986).

17