IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| LACHICA BEAVERS, MARILYN BROOKINS, | ) | |
| PAMELA CROFT, SHARON THOMAS, | ) | |
| and SARAH BITTICKS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 01-PT-3059-E |
| | ) | |
| SHONEY'S, INC., d/b/a CAPTAIN D'S, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION

This cause comes on to be heard upon defendant's Motion for Summary Judgment, filed on July 15, 2002. This employment discrimination action involves multiple plaintiffs, multiple positions and/or conditions of employment, and multiple decision-makers. To avoid confusion, the court has asked the parties to group these claims based upon which decision-maker(s) ultimately made the decision(s) that were allegedly adverse to one or more of the plaintiffs.[1] This opinion will address only those employment decisions made by Cortez Walker and/or Eric Brown.[2]

### FACTS AND PROCEDURAL HISTORY

Defendant Shoney's, Inc., d/b/a Captain D's ("Shoney's"), is in the business of, among other things, operating the chain of Captain D's restaurants. At all times relevant to this lawsuit, Cortez Walker ("Walker") was an Area Director for Shoney's. Eric Brown ("Brown") was the

---

[1] This arrangement was made via telephone conference on November 19, 2002.

[2] It is obvious that the plaintiffs brought a "shotgun" action, often criticized by the Eleventh Circuit, addressed to all positions which have been filled. Apparently, there were never any EEOC charges filed. There has been an apparent inclusion of possible plaintiffs.



General Manager at the Oxford (and formerly Anniston) Captain D's location. According to Shoney's, Walker supervised Brown. Plaintiff Pamela Croft ("Croft") was employed at the Gadsden, Alabama (Rainbow Drive) location. Plaintiff Marilyn Brookins ("Brookins") was also employed at the Gadsden, Alabama (Rainbow Drive) location. Plaintiff Sharon Thomas ("Thomas") was employed at the Oxford, Alabama (and perhaps Anniston, Alabama) location. Plaintiff Sarah Bitticks ("Bitticks") was also employed at the Oxford, Alabama location. Plaintiff Lachica Beavers ("Beavers") was employed at the Oxford, Alabama location. All five plaintiffs are African American.

There are five employment positions at issue for purposes of this opinion:

(1) Restaurant Manager (1st Asst.) Position at the Oxford Location

This position was filled by Brown and Walker[3] on October 8, 2001. The position was given to Scott Anderson ("Anderson"), a Caucasian. Croft, Brookins, Thomas, and Bitticks brought suit with respect to this position.

(2) General Manager Position at the Anniston Location

This position was filled by Walker on October 8, 2001. The position was given to Rebecca Mahannah ("Mahannah"), a Caucasian. Croft, Brookins, Thomas, and Bitticks brought suit with respect to this position.

(3) General Manager Position at the Oxford Location

This position was filled by Walker on October 8, 2001. The position was given to Brown, a Caucasian. Croft, Brookins, Thomas, and Bitticks brought suit with respect to this position.

---

[3] Shoney's asserts that Brown filled the position with authorization from Walker. *See* Def. Br. at 6.

### (4) Shift Leader (Kitchen) at the Anniston Location

This position was filled by Brown[4] on September 10, 2001. The position was given to Brandon Stedham ("Stedham"), a Caucasian. Only Beavers brings suit with respect to this position.

### (5) Shift Leader (Kitchen) at the Oxford Location

This position was filled by Brown and Walker[5] on October 8, 2001. The position was given to Stedham, a Caucasian. Only Beavers brings suit with respect to this position.

It is undisputed that none of the plaintiffs applied for these positions; however, it is also undisputed that the positions were not posted. There is also no dispute that all plaintiffs are members of a protected class, or that all five positions were filled by a Caucasian.[6]

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted based upon facts developed through pleadings, discovery, and supplemental affidavits, etc., if together, they show that there is no genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the initial burden of explaining the basis of his motion. *Celotex*, 477 U.S. at 323. "It is never enough [for the movant] simply to state that the non-moving party could not meet their burden at trial." *Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000)

---

[4]Shoney's asserts that Brown and Walker filled the position. *See* Def. Br. at 21.

[5]Shoney's asserts that Brown filled the position with authorization from Walker. *See* Def. Br. at 22.

[6]More specific facts will be discussed in relation to the parties' various arguments.

(quotation omitted). The non-moving party then bears the burden of pointing to specific facts demonstrating that there is a genuine issue of fact for trial. *Celotex*, 477 U.S. at 324. The non-moving party "must either point to evidence in the record or present additional evidence 'sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.'" *Hammer v. Slater*, 20 F.3d 1137, 1141 (11th Cir. 1994) (quotation omitted). Summary judgment is required where the non-moving party merely repeats its conclusory allegations, unsupported by evidence showing an issue for trial. *Comer v. City of Palm Bay*, 265 F.3d 1186, 1192 (11th Cir. 2001) (citation omitted).

Summary judgment will not be granted until a reasonable time has been allowed for discovery. *Comer*, 265 F.3d at 1192. Moreover, "[w]hen deciding whether summary judgment is appropriate, all evidence and reasonable factual inferences drawn therefrom are reviewed in a light most favorable to the non-moving party." *Korman v. HBC Florida, Inc.*, 182 F.3d 1291, 1293 (11th Cir. 1999). Finally, the trial court must resolve all reasonable doubts in favor of the non-moving party, although it need not resolve all doubts in a similar fashion. *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990).

## ARGUMENTS

### I. *Prima Facie* Case

As noted above, the parties agree that plaintiffs are members of a protected class and that the positions were filled by Caucasian employees. Shoney's assumes that Beavers was qualified for the Shift Leader Position (Position 4) at the Anniston location, but disputes whether any plaintiff was qualified for any other position.

#### A. Plaintiffs' Position

While the plaintiffs never actually applied for the positions, they argue that they were not required to, because the positions were never posted, i.e., plaintiffs did not have notice of the positions being open. Plaintiffs rely heavily on *Carmichael v. Birmingham Saw Works*, 738 F.2d 1126 (11th Cir. 1984), to support their position. In *Carmichael*, the court held that "the plaintiff was not required to ask specifically for that job when he did not know about it and where there was no formal mechanism for expressing his interest." *Id.* at 1132-33. According to plaintiffs, the same reasoning applies here. In relation to the *prima facie* case, the court in *Carmichael* noted that

> The prima facie case raises a presumption of discrimination because it eliminates the most common reasons for rejecting a job applicant: a lack of qualifications and a lack of an available job.... The paradigmatic prima facie case, described in *McDonnell Douglas*, requires the plaintiff to prove that he "applied for" a job to eliminate another obvious nondiscriminatory reason: that the plaintiff was not offered the job because the company did not know he was interested. McDonnell Douglas "align[s] closely the prima facie case with proof of elements within the plaintiff's own objective knowledge." ... By showing that he applied, the plaintiff shows that the employer knew he was interested in the job. But when there is no formal notice of the job's availability, the plaintiff may have no means, within his own knowledge, of showing whether the employer considered him or not. *Furthermore, when an employer uses such informal methods it has a duty to consider all those who might reasonably be interested, as well as those who have learned of the job opening and expressed an interest.*

*Id.* at 1133 (citations omitted) (emphasis added). According to plaintiffs, the *prima facie* case is satisfied, even if the plaintiff did not apply for the job, "as long as he establishes that the company had some reason or duty to consider him for the post." *Id.* Furthermore, "the defendant's subjective promotion procedures imposed on the defendant a duty to consider for any open position all employees who might reasonably be interested in the position." *Id.* at

5

1134.[7]

Plaintiffs also cite *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546 (11th Cir. 1986), and *Roberts v. Gadsden Mem'l Hosp.*, 835 F.2d 793 (11th Cir. 1988), as affirming the principles set out in *Carmichael*. The Eleventh Circuit again recognized that "informal, secretive, and subjective hiring or promotion decision processes tend to facilitate the consideration of impermissible criteria, such as race." *Roberts*, 835 F.2d at 798. According to plaintiffs, they have established a *prima facie* case, because, under these facts, it would be reasonable to impose a duty on Shoney's to seek them out.

Plaintiffs (except Beavers) also argue that they were qualified for the General Manager positions. Plaintiffs acknowledge that the possible criteria for General Manager include, among other things, performance, punctuality, leadership, and the ability to train employees, manage and administer personnel policies, and deal with employee problems. *See* Walker Depo. at 32. However, they contend, only management experience was considered in this case. *Id.* at 41. They also note that there is not a checklist for being qualified for the position of General Manager. *Id.* at 59-60.

As to specific qualifications for General Manager, plaintiffs contend that they were all qualified for the Restaurant Supervisor and Restaurant Manager positions. *Id.* at 70-73. Indeed, Bitticks has been both Restaurant Supervisor and Restaurant Manger. *See* Pl. Ex. 8. Plaintiffs contend that Restaurant Manager is the first to be considered for General Manager. *See* Walker Depo. at 34. Croft, Brookins, and Thomas note that they have been employed by Shoney's for at

---

[7]The court also notes the Eleventh Circuit holding that "[t]he failure to establish 'fixed or reasonably objective standards and procedures for hiring' is a discriminatory practice." *Carmichael*, 738 F.2d at 1133 (citations omitted).

least ten years each. *See* Pl. Exs. 1, 3, 6. Plaintiffs also contend that they were involved in management at their restaurants and/or were given additional responsibilities. *See* Croft Depo. at 17; Brookins Depo. at 26; Walker Depo. at 41; Pl. Exs. 6, 8; Tarvin Aff. at ¶ 5. Croft and Brookins note that their performance reviews have exceeded expectations. *See* Pl. Exs. 2, 5. Finally, Walker testified that Thomas knows how to follow directions, can manage and administer, and can deal with employee problems. *See* Walker Depo. at 48, 53-54. Plaintiffs contend that Shoney's has admitted that they were minimally qualified for the other three positions. *See* Tarvin Depo. at 29-30; Walker Depo. at 70-73 (Restaurant Manager Position); Walker Depo. at 69 (Shift Leader).

### B. Defendant's Response

Shoney's argues that Walker and/or Brown had no duty to consider these plaintiffs for these positions. Shoney's notes that plaintiffs must show that the employer "was on notice that [the employee] 'might reasonably be interested'" in the promotion. *Cox*, 784 F.2d at 1560 (citation omitted). According to Shoney's, if a decision-maker does not know the plaintiff or is unfamiliar with the plaintiff's job performance, as a matter of law he cannot discriminate against her. *See Walker*, 286 F.3d at 1275.

As to Brookins and Croft, Shoney's argues, there is no evidence to suggest that it was on notice that they were interested in these promotions. Neither of these plaintiffs worked at the Anniston or Oxford restaurants where the positions were filled. *See* Croft Depo. at 8-10, 16; Brookins Depo. at 20, 25. Neither of these plaintiffs has offered any evidence that they expressed an interest in being promoted or in commuting to the Anniston/Oxford area. There is no evidence that Walker or Brown even knew these plaintiffs or that either Walker or Brown was

familiar with their job performance. Finally, Shoney's notes, neither Brookins nor Croft applied for the First Assistant position that was posted in their own restaurant in June 2002. *See* Tarvin Aff. at ¶ 2.

As to Thomas, Shoney's notes that there is no evidence that she had ever expressed a general interest to Brown about being promoted, nor did she ever tell Walker that she was interested. *See* Walker Depo. at 39-40. As to the Anniston General Manager position, Thomas had been transferred out of Anniston in late 1999, at her request, due to a conflict with another employee. *See* Brown Aff. at ¶ 3. According to Shoney's, Thomas made it clear that she did not want to work in Anniston. *Id.* Moreover, regarding the General Manager positions, Walker testified that Thomas did not provide leadership "as well as she should have," and that she did not always demonstrate the ability to train. *See* Walker Depo. at 48. Nor could she deliver food in an appropriate manner. *Id.* at 51. She also stated that she was no better qualified than Brown for a General Manager position. *See* Thomas Depo. at 28.

Finally, as to Bitticks, there is no evidence that she expressed a desire to transfer to Walker or Brown. For the Oxford positions, Shoney's notes that Bitticks was transferred from the Restaurant Manager job in Oxford to the Anniston restaurant in October 2001. *See* Walker Depo. at 127. Bitticks did not indicate any dissatisfaction about such a transfer. *See* Macke Aff. at ¶ 3. It is not logical, Shoney's argues, to think that she should be transferred back to the same position she had recently left. For the General Manager positions, Shoney's notes that Walker did not think that she was qualified for the job. *See* Walker Depo. at 73-74. In addition, Bitticks was demoted to Restaurant Supervisor when she was transferred to Anniston, *id.* at 124-25, further indicating that she was not qualified.

8

C. Plaintiffs' Reply

Plaintiffs cite *Carmichael* for the proposition that "when an employer uses such informal methods it *has a duty* to consider all those who might reasonably be interested." 738 F.2d at 1133 (emphasis added). Thus, plaintiffs argue, the question becomes which employees might reasonably be interested in a position, a question that the Eleventh Circuit has held is one of fact. *Id.* at 1134 ("It is a disputable question of fact whether the defendant had any reason to think the plaintiff was interested in a sales job."). Thus, the jury should be allowed to determine what is reasonable. Plaintiffs also note that Shoney's has admitted that it will consider employees for a promotion, even if that employee has not expressed an interest in a promotion. *See* Walker Depo. at 49-50.

Plaintiffs acknowledge the more recent case of *Walker v. Prudential Prop. & Cas. Ins. Co.*, 286 F.3d 1270 (11th Cir. 2002), which, while affirming its principles, distinguished *Carmichael*. However, in *Walker*, plaintiffs argue, the promotions at issue took place in different cities over two hundred miles apart. *Id.* at 1276. Here, the locations in question were no more than thirty miles apart (i.e., Gadsden and Anniston/Oxford), and there is evidence that employees were sometimes transferred back and forth between locations. *See* Walker Depo. at 24, 90, 125-26, 141-42.

## II. Legitimate, Non-discriminatory Reason and Evidence of Pretext

Next, Shoney's argues, even if the *prima facie* case has been satisfied, it has presented legitimate, non-discriminatory reasons for each of the employment decisions at issue.

A. The Oxford Location (Positions 1, 3, and 5)

1. Defendant's Position

Shoney's contends that these three positions were filled as part of a group lateral transfer, as opposed to promotions, in October 2001 from the Anniston location to the Oxford location. According to Shoney's, high food costs, high labor costs, and terrible customer reports, among other things, made the Oxford location a chronic underperformer. *See* Walker Depo. at 28-29; Walker Aff. at ¶ 7. Shoney's sought a clean slate, and decided to replace Oxford employees with proven performers from outside the restaurant. *See* Walker Depo. at 27; Walker Aff. at ¶¶ 7-8. In accordance with that plan, Shoney's demoted the existing General Manager at Oxford and filled the position with Brown, who was the General Manager in Anniston at the time. *See* Interrog. Resps.; Walker Aff. at ¶ 8. However, Shoney's asserts, Brown only agreed to take the job if "he could take certain key people with him when he transferred down there to, you know, positively affect the performance [of] that store as quickly as he could." Walker Depo. at 126-27. Shoney's contends that Brown was given permission to ask Anniston employees, both African American and Caucasian, to transfer to Oxford in the same positions that they currently held. *See* Brown Aff. at ¶ 2; Walker Aff. at ¶ 8. Some chose to go with Brown, others chose to remain. Those that chose to go with Brown were Anderson (Position 1) and Stedham (Position 5).

Shoney's notes that, with the exception of Bitticks, none of the plaintiffs were working in Anniston when these transfers occurred. Bitticks, although employed in Anniston, had just been transferred from the poorly performing Oxford store around the time that Brown went to Oxford. *See* Interrog. Resps.; Bitticks Depo. at 14; Walker Depo. at 127. Shoney's notes that Croft and Brookins worked in Gadsden, that they had never worked under Brown, and that giving one of them the Restaurant Manager position would have been a promotion, not a transfer. Thomas and

10

Beavers were part of the Oxford crew that was performing so poorly. There is simply no evidence that these business decisions were the result of intentional racial discrimination. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000)("The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.")(citation omitted).[8]

### 2. Plaintiffs' Response

Plaintiffs counter that Walker limited Brown's choices to employees at the Anniston location. *See* Brown Aff. at ¶ 2. Plaintiffs contend that Walker has given no basis for his decision to make such a limitation, and notes that subjective criteria by white decision-makers provides a "ready mechanism for racial discrimination." *Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 644 (11th Cir. 1998). And although Walker stated that Brown selected these employees because he had worked with them before, they were employed at the Anniston store, etc., there is no evidence that Brown actually considered these reasons when he selected them. *See* Brown Aff. Plaintiffs note that an employer may not justify its burden of production by offering a justification that the employer did not consider at the time the decision was made. *See Turnes v. AmSouth Bank*, 36 F.3d 1057, 1061 (11th Cir. 1994). They also note that the fact that Anderson was promoted at a faster rate than them can be evidence of discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Finally, they note that Brown had been demoted before, as had Bitticks, but he was given the job in Oxford anyway.

---

[8]Shoney's also argues that this lateral transfer undercuts the plaintiffs' *prima facie* case with respect to these three positions. First, under *Carmichael*, there would be no duty to consider these plaintiffs because Shoney's was seeking to laterally transfer employees from Anniston, not promote. Second, the fact that the plaintiffs did not work in Anniston shows that there were not qualified for the positions, because, for these positions, that was a specific qualification that Shoney's was looking for. Third, there are no "equally or less qualified" Caucasians who were *promoted*. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1539 n.11 (11th Cir. 1997).

11

3. Defendant's Reply

Shoney's notes that seniority had no bearing on the decisions. *See* Interrog. Resps. Shoney's also notes that subjective criteria are appropriate, especially when the position at issue is supervisory. *See Chapman v. AI Transport*, 229 F.3d 1012, 1033-34 (11th Cir. 2000). Nor can plaintiffs show that their qualifications were so superior that the disparity "slaps you in the face." *Cofield v. Goldkist, Inc.*, 267 F.3d 1264, 1268 (11th Cir. 2001).

B. General Manager Position at the Anniston Location (Position 2)

1. Defendant's Position

Shoney's contends that Walker decided to promote Mahannah because of "demonstrated performance" which he specified included some of the following factors: "her attitude, her ability to organize, a positive attitude toward running the business, customer service, a knowledge of the paperwork required as a general manager, desire to be a general manager, past experience with the company, recommendation from current supervisors, . . . [and] [d]emonstrated ability to perform and deliver." Walker Depo. at 77-79. Shoney's notes that Mahannah came highly recommended from her previous supervisor, Donnie Tarvin. *See* Tarvin Depo. at 25-26.

By contrast, Croft has no prior experience as a General Manager and was a Shift Leader in the Kitchen. *See* Croft Depo. at 16. Walker stated that "typically, we wouldn't promote [a shift leader] to a general manager." Walker Depo. at 68-69. Croft also admitted that she was not more qualified than Mahannah, stating that she simply thought that she was "equally qualified." Croft. Depo. at 30. As to Brookins, Walker stated that "[s]he was inconsistent in her performance as a [dining room] supervisor . . . [she] was an average to below average performer

on a given day." Walker Depo. at 60. Thomas did not provide leadership "as well as she should have," and she did not always demonstrate the ability to train. *Id.* at 48. Nor could she deliver food in an appropriate manner. *Id.* at 51. Finally, Shoney's notes, Bitticks had just been demoted and transferred to Anniston. *Id.* at 124-25.

2. Plaintiffs' Response

Plaintiffs contend that there is no evidence that Walker considered any of these articulated reasons at the time the decision was made. *See Turnes*, 36 F.3d at 1061. Moreover, as noted above, there is no checklist of criteria for being qualified as a general manager. *See* Walker Depo. at 59-60. Plaintiffs also again note that subjective criteria are a "ready mechanism for racial discrimination." *Carter*, 132 F.3d at 644. They also note that Walker stated that he did not review Mahannah's personnel file, discipline records, or performance evaluations before making his decision. *See* Walker Depo. at 79, 81, 86. Mahannah had been disciplined, for the second time, two months before her promotion, for violating cash handling policies. *See* Pl. Ex. 34. Moreover, Walker stated that he was unsure of whether he actually considered any of the reasons he gave for hiring Mahannah. *See* Walker Depo. at 77-78.[9]

3. Defendant's Reply

While Mahannah may have been disciplined at some time in the past, the disparity in qualifications between her and plaintiffs do not "slap[] you in the face." *Cofield*, 267 F.3d at 1268. Indeed, Croft admitted that she was not more qualified than Mahannah. *See* Croft Depo. at 30. Moreover, Walker stated that prior discipline is not the only factor that he considers in awarding a promotion, and it often has no bearing on the decision, especially if performance had

---

[9] Plaintiffs also contend that these arguments apply to the General Manager position in Oxford.

13

improved. *See* Walker Depo. at 15, 17, 32, 79.

### C. Shift Leader (Kitchen) at the Anniston Location (Position 4)

#### 1. Defendant's Position

Shoney's contends that Walker and Brown were looking for someone who possessed experience, knowledge of the job, neat appearance, ability to be a team player, ability to follow direction, punctuality, and the ability to perform the job. *See* Interrog. Resps. Walker and Brown selected Stedham because he had previous management experience and had demostrated good job performance. *Id.*

#### 2. Plaintiff's Response

Beavers counters that there is no evidence that any of these reasons were considered by Brown and/or Walker. *See Turnes*, 36 F.3d at 1061.

#### 3. Defendant's Reply

Shoney's notes that Beavers was terminated in December 1998 from her position as a cashier in the Anniston location for discrepancies in the amount of money in her register. *See* Beavers Depo. at 12-13; Walker Aff. at ¶ 3. Beavers was rehired at the Oxford location in February of 1999. *See* Beavers Depo. at 12, 36. Seniority played no part in the decision.[10]

## CONCLUSIONS OF THE COURT

The court will dismiss all claims of plaintiffs Brookins and Croft. Among other possible reasons, they were located in the Gadsden area and were remote to the Anniston-Oxford positions. There is no substantial evidence that the decision-makers were on notice that Brookins and Croft might reasonably be interested in the Anniston-Oxford positions or that the

---

[10] Shoney's also contends that these arguments apply to the Shift Leader position in Oxford.

decision-makers were familiar with them or their work. *See Walker v. Prudential Prop. & Cas. Co.*, 286 F.3d 1270 (11th Cir. 2002), and earlier discussions of the court in this case.

The court will address the claims otherwise by the numbers listed above.

Position #1

Only Thomas and Bitticks are to be further considered.

### Thomas

Thomas was not similarly situated to Anderson. Anderson held the position of Restaurant Manager in Anniston and received a lateral transfer. It was not a promotion. This claim will be dismissed.

### Bitticks

Bitticks was not similarly situated to Anderson. Anderson held the position of Restaurant Manager in Anniston and received a lateral transfer. It was not a promotion. This claim will be dismissed.

Position #2

Only Thomas and Bitticks are to be further considered.

### Thomas

The court cannot decide the disputed issues as a matter of law.

### Bitticks

The court cannot decide the disputed issues as a matter of law.

Position #3

Only Thomas and Bitticks are to be further considered. The action involved was not a promotion, but a lateral transfer. Neither of the appropriate "applicants," Thomas and Bitticks,

15

had been General Managers. Brown, a General Manager in Anniston, was transferred to Oxford. Neither Thomas nor Bitticks was similarly situated; thus, no disparate treatment. These claims will be dismissed.

Position #4

The court cannot conclude, as a matter of law, that Beavers should not have been considered for the position.

Position #5

This was a lateral transfer, not a promotion. Beavers was not similarly situated. The claim will be dismissed.

Summary

All claims herein will be dismissed except for the following:

| Position | Name |
|----------|----------|
| (2) | Thomas |
| (2) | Bitticks |
| (4) | Beavers |

The fact that the court may not have specifically ruled on certain arguments advanced by the plaintiffs or the defendant should not be taken as a suggestion that the arguments do or do not have merit.

This ___29___ day of May, 2003.

ROBERT B. PROPST
SENIOR UNITED STATES DISTRICT JUDGE

16